**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LOUIS S. MCKNIGHT, | : | Civil No. 12-1684 (RMB) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| ERIC TAYLOR, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES:**

> LOUIS S. MCKNIGHT, #243978, Plaintiff Pro Se
> Camden County Correctional Facility
> P.O. Box 90431
> Camden, NJ  08103

**BUMB, District Judge**:

Plaintiff, Louis S. McKnight, a prisoner incarcerated at Camden County Correctional Facility ("CCCF"), seeks to file a Complaint asserting violation of his rights under 42 U.S.C. § 1983 without prepayment of the filing fee.  This Court will grant Plaintiff's application to proceed in forma pauperis.  Having screened Plaintiff's Complaint, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint, without prejudice to the filing of an amended complaint, and decline to exercise supplemental jurisdiction.

## I. BACKGROUND

Louis S. McKnight brings this Complaint for violation of his constitutional rights under 42 U.S.C. § 1983 against the Warden of CCCF (Eric Taylor) and two Deputy Wardens (Anthony Pizarro and Christopher Fosler). He asserts the following facts in the body of the Complaint:

> Health issues, infection of boils going around, dietary issues, prep[a]r[a]tions of serv[]ing foods, over crowd[e]dness, at long periods of time, three to fo[u]r people sleeping on the floor, no re[crea]tion in gym[,] broken ele[]vators often going and coming back and forth to court. Buying and consumers act, selling products five times the[i]r retail prices, one bathroom for eig[h]ty to 100 inmates in the every day reck area.
>
>       \*               \*              \*
>
> From 10/19/10 until[] the present time these issues have still not been taken care of. The officers still have the need to violate our rights when the[re] is a administr[]ative search of cells, to strip search inmates before going back in cells here in this facility.

(Dkt. 1 at 3, 5.)

Two documents are attached to the Complaint. Plaintiff attached a memorandum to the "Inmate Population" dated March 21, 2011, from Karen Taylor, Lieutenant in the Camden County Department of Corrections, regarding "Lock In/Lock Out Directive (Grievance Response)." (Dkt. 1 at 7.) This memorandum states, in relevant part:

> Effective today, the Camden County Correctional Facility implemented the Lock In/Lock Out directive that mandates cell doors to be secured. The facility will provide maximum lock-out time for its inmates and

>will lock them in only when necessary to accomplish facility business and during sleeping . . . . At each interval during which inmate[s] are permitted to lock-out (or lock-in) [] their cells, those inmates who wish to do so, may return to their cells to retrieve personal items and shall not be required to lock-in their cells.  Any inmate who chooses to remain in his/her cell during lock-out periods shall be permitted to do so.
>
>Inmates shall have access to showers, toilets and washbasins twenty four hours per day.  Officers shall permit access to bathroom facilities . . . .  Inmates will receive laundry, barbering, and hair care services, and will be issued and exchanged clothing, bedding, and linen on the same basis prior to the implementation of the directive.  Recreational programs, visits, and religious activities will continue as scheduled[;] however[,] it's an individual responsibility to avail yourself to these activities.  Medical care and food services shall be provided in accordance to standards.
>
>Inmates shall not be confined to their cells except during the following periods:
>a.  At night during sleeping hours; and
>b. During the daytime for conducting facility business, which can only be accomplished while inmates, are locked in their cells.
>
>Security devices such as cell doors when left unsecure[d] create an atmosphere of disorder promoting aggression, theft, violent behavior, and fighting.  Neutralizing such attitudes will generate stability and order.

(Dkt. 1 at 7.)

The second attachment is a five-page handwritten letter dated May 26, 2011.  (Dkt. 1 at 8.)  The sender's address at the top of the first page is Louis S. McKnight, CCCF.  <u>Id.</u>  The reference line reads "Class Action Suit Against Camden County Correctional Facility," and the salutation reads "Dear Sir/Madam

3

Attorney." Id.  The closing on the fifth page reads "Sincerely Yours, Louis S. McKnight." Id. at 12.  The two pages following the letter contain the signatures (with a number next to each signature) of 119 persons, who are presumably inmates at CCCF. Id. at 13-14.  The body of the letter concerns a request "that your law firm represent our case before the honorable court." Id. at 8.  The letter states that the reasons for this suit are:

> Preparation of the food and serving[] (3) regular meal(s) of 1800 to 3000 [] diets.  Not having the proper dietary aide to make sure of the proper servings seasoning ets.  The housing conditions having three to four inmates to a two man cell sleeping on the floor, unsanitary serving conditions, meals being served in foul trays, food being placed on the floor in (7) seven day lock-in.  With no sanitary tops to the trays.  Tray servers are not properly dress[ed] to serve food, no face [illegible], no hairnets, no hand sanitizer whatsoever.  Health reasons, the showers have black mol[d] on the walls, the drinking water that comes out of one's sink in the cells often comes out brown from rusted or backed up septic pumps.  Inmates are often put in population with boils and other infections. Also the elevators are unsafe, or is always broken down, including that the Camden County Correctional Facility has taken away its law library, so the inmates cannot go research their case [to] prepare for trial or file for prose on their own behalf, including the fact that Camden County Correctional Facility also close[d] sown its recreation gym[nasium] . . . .  I am asking Sir/Madam law firm and other agenc[ies] to look upon this injustice, because we are not in prison, which is to say we haven't been found guilty of our suspicions . . . .  I live on a tier where there is eighty nine inmates and every day more are brought in.  The tier only houses fifth two.  The rest are forced to lay on the floor . . . .  Also there is only one toilet for all the inmates to use.  Upon walking in one would be forced to hold their breath, for of the stench . . . . Our bails are so high that it is impossible for one to get out of jail.  Now due to the living conditions they have no heart to seek justice . . . .  We are force[d]

> to either lock in[] or be locked out the cells in the
> day room.  To make matters worse one would ha[ve] to[]
> carr[y] any and everything he needs, like soap, shower
> shoes, deodorant, tooth paste, tooth brush, underwear,
> t-shirt, sox, lotion, even snacks off of commissary,
> ID's just in case an[] inmate gets medication.  All of
> these items are carrie[d] in clear plastic trash bags
> like we are homeless . . . .  The commissary prices
> [are] jacked up so high, the items that are on their
> list are twice and then some, against the code of
> retail and consumers guidelines . . . .  Ex-Senator
> Kristy Whitteny husband owns the company name Keefe
> Commissary Net Work Sales.  Every institution in the
> State of New Jersey gets their products from this ex-
> Senator's husband . . .  We the inmates that have
> signed this petition of the Camden County Facility
> seek[] to file a civil law suit[] against the Camden
> County Correctional Facility.

(Dkt. 1 at 8-12.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 677.  Rather, the facts set forth in the complaint must show that each defendant, through the person's own individual actions, has violated the plaintiff's constitutional rights.  Id.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed.  Id. at 678 (citations and internal quotation marks omitted); see also Bistrian v. Levy, ___ F.3d ___, 2012 WL 4335958 *8 (3d Cir. Sept. 24, 2012) ("The touchstone of the pleading standard is plausibility"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

6

### III.  DISCUSSION

Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).  The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at 546.  "Restraints that are reasonably related to the institution's interest in

7

maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540.  "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them."  Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

    The Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part test.  We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes."  Hubbard v. Taylor, 538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted).  Moreover, the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components.  As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . .

>      (1991), the objective component requires an
> inquiry into whether "the deprivation [was]
> sufficiently serious" and the subjective
> component asks whether "the officials act[ed]
> with a sufficiently culpable state of
> mind[.]" Id. at 298 . . . .  The Supreme
> Court did not abandon this bipartite analysis
> in Bell, but rather allowed for an inference
> of mens rea where the restriction is
> arbitrary or purposeless, or where the
> restriction is excessive, even if it would
> accomplish a legitimate governmental
> objective.

Stevenson, 495 F. 3d at 68.

Objectively, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety."  Helling v. McKinney, 509 U.S. 25, 32 (1993). To satisfy the objective component, an inmate must show that he was subjected to genuine privation and hardship over an extended period of time.  See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

Applying the above principles to this Complaint, this Court finds that Plaintiff's allegations, as written, do not satisfy the objective component because they do not show that Plaintiff himself endured genuine privations and hardship over an extended period of time. See Hubbard, 538 F. 3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in maximum security did not violate due process). As written, Plaintiff's allegations do not satisfy the objective component of a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.

Nor do Plaintiff's allegations satisfy the subjective component of a conditions of confinement claim under the Due Process Clause. First, an individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing the personal involvement of each defendant, that is, the Warden and the two Deputy Wardens. See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v.

10

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").

Second, Plaintiff does not assert facts showing that each defendant was deliberately indifferent to his health or safety. To establish deliberate indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the allegedly substandard conditions. See Farmer v. Brennan, 511 U.S. 825, 829 (1994). Here, Plaintiff makes no allegations whatsoever with respect to the subjective component. Moreover, the memorandum attached to the Complaint shows that officials responded to (some) inmate grievances, and "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. Because the Complaint makes no factual allegations showing the deliberate indifference of each defendant, and because vicarious liability does not apply under § 1983, the Complaint fails to satisfy the subjective component of a conditions of confinement claim as to any of the three defendants.[1]

---

[1] The letter attached to the Complaint, which was presumably sent to unspecified lawyers, describes the general conditions of confinement in more detail than the Complaint, but the letter does not relate the general conditions to Plaintiff or assert facts showing that the named defendants were deliberately indifferent.

B.  Strip and Cell Searches

Without setting forth facts regarding his own experience at CCCF, Plaintiff generally complains that jail officials violate the rights of inmates by searching cells and strip searching inmates.  "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."  Florence v. Bd. of Chosen Freeholders of County of Burlington, 132 S.Ct. 1510, 1517 (2012).  Where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated."  Id. at 1518 (citation and internal quotation marks omitted).  In Bell v. Wolfish, 441 U.S. at 558, the Supreme Court held that a prison rule requiring pretrial detainees to expose their body cavities for visual inspection as part of a strip search conducted after every contact visit with a person from outside the facility does not violate the Fourth Amendment.  This year, in Florence, the Supreme Court held that a jail policy of requiring that persons admitted to a jail remove their clothing and expose their genital areas for visual inspection as a routine part of the intake process does not violate the Fourth Amendment.  See Florence, 132 S.Ct. 1510.  Because Plaintiff did not allege facts showing that he was strip searched and that the strip search was so outside the scope of reasonable search policy that

12

it would rise to the level of a Fourth Amendment violation, this Court will dismiss the § 1983 strip search claim for failure to state a claim upon which relief may be granted.  See Aruanno v. Allen, 2012 WL 4320446 (3d Cir. 2012).

Plaintiff also complains generally that administrative cell searches violate the rights of inmates.  This Court will dismiss this claim under § 1983 because the Supreme Court held in Hudson v. Palmer, 468 U.S. 517, 526 (1984), that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  Accord Crosby v. Piazza, 465 Fed. App'x 168, 172 (3d Cir. 2012).

C.  Law Library Access

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  To establish standing, "[t]he

13

complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" <u>Monroe</u> at 205-206 (quoting <u>Christopher</u> at 416-17).

In this Complaint, Plaintiff generally asserts that pretrial detainees are not able to do legal research, but he provides no facts showing actual injury.  Accordingly, the Complaint, as written, fails to show that Plaintiff has standing to pursue an access to courts claim.  This Court will dismiss the access to courts claim without prejudice.

D.   Commissary Prices

Plaintiff complains that commissary prices are extremely high and the commissary is operated by the brother of an ex-senator.  Prisoners have no federal constitutional right to purchase items from the jail commissary at any particular price, or to restrain the vendor from charging exorbitant prices.  <u>See</u> <u>French v. Butterworth</u>, 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible"); <u>Travillion v. Allegheny County Bureau of Corrections</u>, 2008 WL 2699988 (S.D. Pa. 2008) (holding that jail inmates have no constitutional right to purchase items from commissary at lower prices); <u>see also</u> <u>Tenny v. Blagojevich</u>, 659 F.3d 578 (7th Cir. 2011) (affirming dismissal of § 1983 claim alleging that

prison officials marked up the price of commissary goods beyond state statutory cap on grounds that no pre-deprivation process could have predicted or prevented the alleged deprivation of property and plaintiffs did not allege the absence of adequate post-deprivation remedies); Myrie v. Commissioner, N.J. Dept. of Corrections, 267 F.3d 251 (3d Cir. 2001) (rejecting inmates' constitutional claims challenging a ten percent surcharge on purchases from jail commissaries in New Jersey).  Because Plaintiff does not allege facts showing that high commissary prices violate his constitutional rights, this Court will dismiss the general challenge to commissary prices for failure to state a claim upon which relief may be granted.

E.  High Bail

The Eighth Amendment provides that "[e]xcessive bail shall not be required."  U.S. Const. amend. 8.[2]  To state an excessive bail claim under § 1983, an inmate must allege facts showing that his bail was excessive in violation of the Eighth Amendment. Moreover, because "a public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights," Baker v. McCollan, 443 U.S. 137, 142 (1979) (internal quotation marks omitted) (emphasis in original),

---

[2] The Supreme Court has not held that the Excessive Bail Clause has been incorporated in the Fourteenth Amendment, but has assumed without deciding that the Clause is incorporated against the States.  See Baker, 443 U.S. at 144 n.3.

Plaintiff must show that Warden Taylor, Deputy Warden Pizarro, or Deputy Warden Fosler actually and proximately caused his bail to be excessive. See Galen v. County of Los Angeles, 477 F.3d 652, 659 (9th Cir. 2007). Plaintiff's Excessive Bail claim fails because he has alleged no facts showing that his bail was constitutionally excessive or that the prison official defendants set or otherwise caused the setting of an excessive bail. This Court will dismiss the Excessive Bail Clause claim.[3]

F.  Amended Complaint

This Court will grant Plaintiff leave to file an amended complaint which states a § 1983 conditions of confinement claim under the Due Process Clause and/or an access to courts claim under the First Amendment. See DelRio-Mocci v. Connolly Properties Inc., 672 F.3d 241, 251 (3d Cir. 2012); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). If Plaintiff elects to file an amended complaint, this Court suggests that he fill in

---

[3] Under New Jersey court rules, initial bail may be set by a New Jersey Superior Court judge for a person charged with any offense, or by any other judge for a person charged with any offense except murder, kidnapping, manslaughter, aggravated manslaughter, aggravated sexual assault, sexual assault, aggravated criminal sexual contact, arrest in an extradition proceeding, or for violation of a restraining order. See N.J. Ct. R. 3:26-2(a). However, "[a]ny person unable to post bail shall have his or her bail reviewed by a Superior Court judge no later than the next day which is neither a Saturday, Sunday nor a legal holiday." N.J. Ct. R. 3:26-2(c). As judges are absolutely immune from damages under § 1983 for setting bail, this Court will not grant leave to amend the Excessive Bail claim. See Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349 (1978); Smith v. Rosenbaum, 460 F.2d 1019 (3d Cir. 1972).

all the blanks on a § 1983 form complaint, which is designed to elicit facts, list each defendant in the caption, and set forth in numbered paragraphs in the body of the complaint facts describing what each defendant did to violate Plaintiff's due process or First Amendment rights.  Also the amended complaint must be complete on its face.[4]

G.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over

---

[4] This Court will not attempt to construct a jigsaw puzzle by piecing together the allegations in two complaints and the letter attached to the original complaint.  Once an amended complaint is filed, previous dismissed complaints no longer perform any function in the case and cannot generally be utilized to cure defects in the current amended complaint. See 6 Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1476 (1990).  Thus, if Plaintiff elects to file an amended complaint, he should name the defendants and on the face of the amended complaint, state facts amounting to a claim against each named defendant.

which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V.   CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed in forma pauperis, dismiss the federal claims raised in the Complaint, and decline to exercise supplemental jurisdiction.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: November 20, 2012